UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JESSICA SINDONI, on behalf of T.S., a minor,

                              Plaintiff,                    3:14-CV-0633
                                                                        (GTS)

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

                              Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

JONATHAN P. FOSTER                       JONATHAN P. FOSTER, ESQ.
 Counsel for Plaintiff
2268 Elmira St.
Sayre, PA 18840

U.S. SOCIAL SECURITY ADMIN.             AMANDA LOCKSHIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL–REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge


## **DECISION and ORDER**

       Currently before the Court, in this Social Security action filed by Jessica Sindoni on behalf of her minor daughter, T.S. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 16.) For the reasons set forth below, Defendant's motion is granted, and Plaintiff's motion is denied.

1

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on June 16, 2011. (T. 101) At the time of her hearing, she was in fourteen months old. (T. 36.) Plaintiff's alleged disability consists of persistent pulmonary hypertension of the newborn ("PPHN"). (T. 105.)

### B. Procedural History

On July 19, 2011, Plaintiff applied for Supplemental Security Income on T.S.'s behalf. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 13, 2012, Plaintiff appeared before ALJ Marie Greener. (T. 33-48.) On November 13, 2012 ALJ Greener issued a written decision finding T.S. not disabled under the Social Security Act. (T. 13-32.) On April 11, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 19-29.) First, the ALJ found that T.S. was a "young infant" at the time of filing and an "older infant" at the time of the hearing pursuant to 20 C.F.R. § 416.926a(g)(2). (T. 19.) Second, the ALJ found that T.S. had not engaged in substantial gainful activity since the application date. (*Id.*) Third, the ALJ found that T.S. suffered from the severe impairments of arterial septal defect ("ASD"), lactose intolerance, reactive airway disease ("RAD"), and persistent pulmonary hypertension of the newborn ("PPHN") pursuant to 20 C.F.R. § 416.924(c). (*Id.*) Fourth, the ALJ found that T.S. did not have an impairment or combination of impairments that meets or

2

medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings"). (T. 20.) Specifically, the ALJ reviewed Listings §§ 104.05, 104.06, 103.02, and 103.03. (T. 20-21.) Fifth, the ALJ found that T.S. did not have an impairment or combination of impairments that functionally equals an impairment set forth in the Listings. (T. 21-28.) Sixth, and finally, the ALJ concluded that T.S. has not been disabled, as defined by the Social Security Act, since July 19, 2011 the date her application was filed. (T. 29.)

## II. THE PARTIES' BRIEFINGS

### A. Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes five arguments. First, Plaintiff argues the ALJ failed to assist the Plaintiff in developing the record and failed to advise Plaintiff about her right to representation. (Dkt. No. 11 at 13-18 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ erred in failing to consider Plaintiff's condition under Listing 110.00. (*Id.* at 18-19) Third, Plaintiff argues the ALJ erred in affording great weight to a non-examining State medical consultant. (*Id.* at 19-20.) Fourth, Plaintiff argues the ALJ erred in failing to find Plaintiff had an "extreme limitation" in the health and physical well-being domain. (*Id.* at 20-21.) Fifth, and lastly, Plaintiff argues that the ALJ erred in failing to find Plaintiff had a "marked limitation" in the moving and manipulating objects domain. (*Id.* at 21.)

### B. Defendant's Argument

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes two arguments. Defendant argues the ALJ properly advised Plaintiff of her right to representation. (Dkt. No. 16 at 5-6 [Def.'s Mem. of Law].) Second, and

3

lastly, Defendant argues the ALJ properly considered the medical evidence. (*Id.* at 6-12.)

## III. RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

4

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*,

5

245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and

6

completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV. ANALYSIS

### A. Whether the ALJ Failed in Her Duty to Advise Plaintiff of Her Right to Representation

After carefully considering the matter, this Court answers this question in the negative, in part for the reasons set forth in Defendant's memorandum of law. (Dkt. No 16 at 5-6 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ failed to properly explain "the importance of legal representation" and failed to "secure any written waiver" of the right to representation. (Dkt. No. 11 at 15 [Pl.'s Mem. of Law].) Although a plaintiff does not have a constitutional right to counsel at a social security disability hearing, she does have a statutory and regulatory right to be represented should she chose. 42 U.S.C. § 406; 20 C.F.R. § 404.1705. The applicable statute and regulations state that, when notifying a plaintiff of an adverse determination, the Commissioner must "notify [the plaintiff] in writing" of (1) her "options for obtaining [an] attorney[ ] to represent [her]" at her hearing, and (2) "the availability ... of ... organizations which provide legal services free of charge" to "qualifying claimants." 42 U.S.C. §§ 406(c), 1383(d)(2)(D); *see also* 20 C.F.R. § 404.1706. At the hearing itself, "the ALJ must ensure that the [the plaintiff] is aware of [her] right [to counsel]." *Robinson v. Sec'y of Health & Human Servs.,* 733 F.2d 255, 257 (2d Cir.1984). The Second Circuit rejected the "enhanced disclosure requirements" established in some circuits. *Lamay v. Comm'r. of Soc. Sec.*, 562 F.3d 503, 508 (2d Cir. 2009) (rejecting the mandatory additional disclosures required by the Fifth, Seventh and Eleventh Circuits and finding the statutory language provided proper notice.)

The Commissioner notified Plaintiff in writing of her right to representation and her options of obtaining representation. The commissioner further supplied her with a list of organizations that provide legal services free of charge, if the Plaintiff qualified. (T. 57-58, 60-64, 78, 82-83.) At the hearing, the ALJ specifically asked Plaintiff if she was aware that she had the right to representation and Plaintiff answered, "[y]es. I did." (T. 35.) The ALJ proceeded to inform Plaintiff of her right to representation, informed her of organizations that provided services free of charge, and also of private attorneys whom

Plaintiff wouldn't need to "pay upfront." (T. 35-36.) Plaintiff indicated that she understood and wished to proceed without representation. (T. 36.) Therefore, prior to the hearing the Commissioner fulfilled her statutory obligation of informing Plaintiff of her right to representation and at the hearing the ALJ fulfilled her obligation as well.

## B. Whether the ALJ Failed to Properly Considered All the Medical Evidence

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons set forth in Defendant's memorandum of law. (Dkt. No 16 at 6-12 [Def.'s Mem. of Law].) The Court adds the following analysis.

### 1. Whether the ALJ Failed to Properly Develop the Record

Plaintiff argues the ALJ failed to fully develop the record; specifically, she failed to obtain additional records following the hearing and failed to request a functional report from Plaintiff's treating physicians and/or surgeons. To be sure, the ALJ has an affirmative duty to develop the record. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("[I]t is the well-established rule in our circuit that the social security ALJ... must on behalf of all claimants ... affirmatively develop the record...." (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 [2d Cir.2009]) (internal quotation mark omitted)). Re-contacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. *See* 20 C.F.R. § 416.912(d). Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 416.912(d)(1); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician, including an assessment of the claimant's functional capacity, in order to afford the claimant a full and fair hearing. *See Smith v. Astrue*, 896 F. Supp. 2d. 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512(e); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002); *Hardhardt v. Astrue*, No. 05-CV-2229, 2008 WL 2244995, at *9 [E.D.N.Y. May 29, 2008]). However, the ALJ has no duty to re-contact a source where the evidence submitted by that source is complete. Where the source's opinion includes all of the factors set forth in 20 C.F.R. § 416.913[1] and there is no indication that further contact will result in additional information, re-contact is not necessary. *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009).

This Court does not agree with Plaintiff's assertion the ALJ "lulled the Plaintiff into believing that the ALJ would get [] records" and "did nothing to assist the Plaintiff." (Dkt. No. 11 at 16, 18 (Pl.'s Mem. of Law.) Post-hearing ALJ requested, obtained, and reviewed additional records based on testimony taken at the hearing.

Post hearing the ALJ obtained additional medical records. (T. 16, referring to T. 250-74.) The additional records included an update from Plaintiff's primary care pediatrician, Jerry Terwilliger, Pediatrics and records from Robert Packer Hospital, which included the Gutherie Clinic, covering the period of November 2011 to August 2012. (T. 250-51 and 252-74.) Evidence submitted by these sources was complete and

---

[1] **Error! Main Document Only.** Pursuant to 20 C.F.R. § 416.913(b), medical reports should include a patient's (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment prescribed with response and prognosis, and a (6) statement about what the patient can still do despite his or her impairments based on the findings set forth in factors (1) through (5).

10

included all factors set forth in 20 C.F.R. § 416.913[2]; therefore, there is no indication that further contact would result in additional information and re-contact is not necessary.

The Plaintiff also argues the Appeals Council ("AC") failed to include medical records in the administrative transcript. (Dkt. No. 11 at 17 [Pl.'s Mem. of Law.]) In its order, the AC acknowledged the receipt of additional evidence; however, the AC concluded that such evidence did not "provide a basis for changing the [ALJ's] decision." (T. 1-2.) The new medical evidence was included in the administrative transcript as "Exhibit 13F: Records from Jerry W. Terwilliger, M.D., dated August 9, 2011 through September 12, 20112." (T. 4 referring to T. 27-303.)

The AC will consider new and material evidence only where it relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 416.1470(b). If it relates to that time period, the AC will review to determine if the ALJ's actions, findings, or conclusion are contrary to the weight of the evidence currently on record. *Id.* Here, the evidence supplied does not warrant remand. (T. 275-303.) The relevant evidence is discussed in greater detail in IV.B.2. The evidence provided "does not add so much as to make the ALJ's decision contrary to the weight of the evidence;" therefore, remand is not necessary. *Rutkowski v. Astrue*, 368 F.App'x 226, 229 (2d Cir. 2010.)

Of note, the Plaintiff attached to her Memorandum of Law a copy of "the original letter [to the AC] and enclosed records." (Dkt. No. 11 at 17 [Pl.'s Mem. of Law].) However, the evidence supplied does not correspond to the evidence provided to the

---

[2] Although the records from treating sources Dr. Finnerty and Dr. Terwilliger did not contain a specific medical source statement, they did contain details of Plaintiff's social and physical functioning in light of her impairments including gross motor skills and language development. (T. 163, 283, 293, 299)

11

AC. (*Id.* at App.)[3] Even if these records were properly submitted to the AC, failure to remand by the AC was harmless as the majority of the records do not relate to the relevant period of time. (Dkt. No. 11 at App. 3, pp10-94 [Pl.'s Mem. of Law].) Those records which do relate to the relevant period of time are not contrary to the ALJ's decision. After the hearing, but before the decision, the Plaintiff underwent surgery to remove an abscess which "went well." (Dkt. No 11 at App. 3, pp 3-4 [Pl.'s Mem. of Law].) Therefore, the AC's determination that the evidence provided did not alter the ALJ's decision was proper.

### 2. Whether the ALJ Erred in Providing "Great Weight" to Dr. Randall

Plaintiff argues the ALJ erred in providing "great weight" to the non-examining State agency medical consultant, J. Randall. (Dkt. No. 9 at 18 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues Dr. Randall's medical opinion was unsupported by the record, the ALJ "rejected" the opinions of the treating physicians and the ALJ failed to order a consultative exam.

The ALJ's reliance on Dr. Randall's report was proper. The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record. *See* 20 C.F.R. § 416.927(e)(2)(i). Further, the Second Circuit has held that an ALJ may rely on a State agency report where the State agency consultant "was the only expert of record who specifically assessed whether [plaintiff's] impairments met or equaled a listed impairment." *Frye ex*

---

[3] Plaintiff's correspondence to the AC stated "Enclosure: (1) Medical Evidence." (T. 8). The correspondence does not state specifically what medical evidence was enclosed, who the evidence was from, or how many pages were included in the enclosure. The AC's decision refers to the receipt of additional medical evidence and the Order contains additional evidence received as including "Exhibit 13F: Records from Jerry W. Terwilliger, M.D. dated August 9, 2011 through September 12, 2012 (29 pages)." (T. 5.) Plaintiff included in her Memo of Law a copy of the request for appeal to the AC and records the Plaintiff asserted were sent contemporaneously. These records are from Dr. Pegoli, and others providers at Strong Memorial Hospital, and consisted of 91 pages dating 10/26/12 - 6/27/13. (Dkt. No. 11 at App.)

*rel. A.O. v. Astrue*, 485 F.App'x 484, 487 (2d Cir. 2012.) As is the case here, Dr. Randall was the only source to specifically assess plaintiff's impairments regarding the Listings.

Dr. Randall opined Plaintiff's impairment, or combination of impairments, was severe, but did not meet, medically equal, or functionally equal the listings. (T. 237.) He opined Plaintiff had "marked" limitations in the domain of "health and physical well-being." (T. 241.) Dr. Randall opined that based on his review of the medical record Plaintiff was born with a congenital diaphragmatic hernia which was repaired and that she was "doing well" post discharge. (*Id.*)

Plaintiff was born June 16, 2011 and shortly after underwent surgery to correct a congenital diaphragmatic hernia. (T. 126.) On July 5, 2011 she was stable and on room air, she was transferred from Strong Memorial Hospital to Arnot Odgen Medical Center. (T. 131.) She was diagnosed with resolved persistent pulmonary hypertension of a newborn ("PPHT"). (T. 134.) While at Strong Memorial Hospital she had two episodes of supraventricular tachycardia ("SVT"). (T. 134.) A cardiologist was consulted and on July 11, 2011 Dr. Finnerty noted a moderate sized atrial septal defect. (T. 157.)

On July 14, 2011 Plaintiff was discharged from care at Arnot Ogden Medical Center with "no barriers" (T. 153) and the active diagnoses of gastroesophageal reflux disease ("GERD"), milk allergy, and SVT (T. 149). The following day Plaintiff had a "well child" visit. (T. 161-62.) James Jabile, M.D. noted that Plaintiff was doing well, feeding well, and "look[ed] well." (T. 162-63.) Plaintiff was seen on July 25, 2011 for oral thrush. (T. 159.)

Dr. Finnerty noted on August 8, 2011 that Plaintiff looked well, had good weight gain, and was "thriving." (T. 167.) On August 17, 2011 Walter Pegoli, M.D., who repaired Plaintiff's congenital diaphragmatic hernia, noted that Plaintiff's post-surgical

13

course was not remarkable, no special care was required and Plaintiff should follow up "as needed." (T. 182.)

A well child visit on October 17, 2011 showed a normal developmental screening and a normal exam. (T. 283.) On November 4, 2011 Plaintiff was seen at the Gutherie Clinic emergency room for congestion and the provider noted she was stable, well developed with a normal heart rate. (T. 254.) Plaintiff went to the emergency room again on November 20, 2011 for conjunctivitis. (T. 255.) Another well child visit on December 22, 2011 indicated a well-developed child and a normal exam. (T. 286.)

On March 3, 2012 Plaintiff visited the emergency room for a fever and tachycardia without evidence of tachydysrhythmia. (T. 257.) Plaintiff was advised to follow up with Dr. Terwilliger. (*Id.*) Plaintiff was back in the emergency room on March 15, 2012 and diagnosed with a respiratory virus. (T. 258.) On March 16, 2012 Plaintiff followed up with Dr. Terwilliger, who noted Plaintiff was in no acute distress, did not have a fever, and was not in pain. (T. 288.) Dr. Terwilliger saw Plaintiff for a well-child visit on April 4, 2012 and noted that she was "growing and developing normally." (T. 293.) He observed a "hernia bulge" that self-reduced. (*Id.*) He increased Plaintiff's Pepcid dosage. (*Id.*) A follow up appointment on April 23, 2012 with Dr. Finnerty showed no evidence of tachycardia and noted Plaintiff was "certainly doing well." (T. 248-49.)

In May of 2012 Plaintiff had "tubes" placed in her ears, she tolerated the surgery well and was discharged. (T. 253, 270.) On May 12, 2012 Plaintiff was seen at the Gutherie Clinic for a cough. (T. 295.) In June of 2012 a well-child visit showed normal development. (T. 299.) On July 14, 2012 Plaintiff presented with a fever and diagnosed with coxsackie. (T. 276-77.) On August 9, 2012 Plaintiff complained of a "painless"

lump, which was believed to be either scar tissue or neoplasm. (T. 268.) On September 12, 2012 Plaintiff was seen for a cough and follow up on the lump. (T. 278.)

In September of 2012 Dr. Finnerty noted Plaintiff was stable from a cardiac standpoint, "not sickly," and showed "no cardiac symptoms." (T. 250.) He stated Plaintiff had no recurrence of SVT and was off her medication for six months or more. (T. 251.) He noted a moderate sized atrial septal defect, but no murmur. (*Id.*)

Dr. Randall's opinion was based on evidence in the record from June 2011 to August 2011. (T. 241.) However, the remainder of the evidence, as summarized here, continued to show Plaintiff's growth and development as normal.

Plaintiff again argues the ALJ should have re-contacted Plaintiff's treating physicians; however, as previously stated in section IV.A., the ALJ was not obligated in this case to re-contact the treating physician for a medical source statement as the medical evidence complied with the requirements of 20 C.F.R. § 416.913(b). The ALJ reviewed the medical evidence in the file and relied on evidence supplied by Plaintiff's treating physicians and Dr. Randall in making her decision.

Further, the ALJ was not under an obligation to order a consultative examination. A consultative exam is used to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim. 20 C.F.R. § 416.919a(b). The decision to obtain a consultative exam is made on a case-by-case basis at the discretion of the Commissioner. *See* 20 C.F.R. §§ 416.917, 416.919–19b. To be sure, "[i]t can be reversible error for an ALJ not to order a consultative exam when an examination is required for an informed decision ." *Tankisi v. Commissioner of Soc. Sec.,* 521 Fed. App'x 29, 32 (2d Cir.2013) (summary order). "However, an ALJ is not required to order a consultative examination if the facts

do not warrant or suggest the need for it." *Id.* (citing *Lefever v. Astrue,* 5:07-CV-622, 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010), *aff'd,* 443 F.App'x 608 [2d Cir.2011]). The ALJ properly used her discretion in not ordering a consultative exam as the medical opinions in the record did not suggest a need for it.

### 3. Whether the ALJ Failed to Consider Listing 110.08(B)

Plaintiff argues she meets Listing 110.08(B) for catastrophic congenital disorder. (Dkt. No. 11, 18-19 [Pl.'s Mem. of Law].) This listing requires "a catastrophic congenital disorder" as defined in Listing 110.00D[4] and 110.00E[5], plus a "[v]ery serious interference with development or functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Specifically, Plaintiff asserts that she suffers from Fryns syndrome. The record is void of any diagnosis of Fryns syndrome, testing for Fryns syndrome, or even suspicion of Fryns syndrome by Plaintiff's physicians. Plaintiff attempts to self-diagnose, stating that she suffered from a diaphragmatic hernia. (Dkt. No. 11 at 19 [Pl.'s Mem. of Law].) The ALJ properly discussed Plaintiff's diaphragmatic hernia at step two of her analysis and determined that it was not a severe impairment. Even if the ALJ had determined

---

[4] Some catastrophic congenital disorders , such as anencephaly, cyclopia, chromosome 13 trisomy (Patau syndrome or trisomy D), and chromosome 18 trisomy (Edwards' syndrome or trisomy E), are usually expected to result in early death. Others such as cri du chat syndrome (chromosome 5p deletion syndrome) and the infantile onset form of Tay-Sachs disease interfere very seriously with development. We evaluate catastrophic congenital disorders under 110.08. The term "very seriously" in 110.08 has the same meaning as in the term "extreme" in §416.926a(e)(3) of this chapter.

[5] We need one of the following to determine if your disorder meets 110.08A or B: 1. A laboratory report of the definitive test that documents your disorder (for example, genetic analysis or evidence of biochemical abnormalities) signed by a physician. 2. A laboratory report of the definitive test that documents your disorder that is not signed by a physician *and* a report from a physician stating that you have the disorder. 3. A report from a physician stating that you have the disorder with the typical clinical features of the disorder and that you had definitive testing that documented your disorder. In this case, we will find that your disorder meets 110.08A or B unless we have evidence that indicates that you do not have the disorder. 4. If we do not have the definitive laboratory evidence we need under E1, E2, or E3, we will find that your disorder meets 110.08A or B if we have: (i) a report from a physician stating that you have the disorder and that you have the typical clinical features of the disorder, *and* (ii) other evidence that supports the diagnosis. This evidence may include medical or nonmedical information about your development and functioning. 5. For obvious catastrophic congenital anomalies that are expected to result in early death, such as anencephaly and cyclopia, we need evidence from a physician that demonstrates that the infant has the characteristic physical features of the disorder. In these rare cases, we do not need laboratory testing or any other evidence that confirms the disorder.

Plaintiff's diaphragmatic hernia was a severe impairment, there is no diagnosis of Ferns disease, or any other complication stemming from this condition, that would require an analysis of Listing 110.08B. Therefore, the ALJ did not err in failing to consider Listing 110.08B.

### 4. Whether the ALJ Failed to Find "Extreme Limitations" in the Health and Physical Well-Being Domain

Plaintiff argues the ALJ failed to find an "extreme limitation" in the domain of health and physical well-being. The Plaintiff fails to provide specific medical evidence to support her argument, instead Plaintiff vaguely states, "[t]he voluminous record speaks for itself." (Dkt. No. 11 at 20 [Pl.'s Mem. of Law].) The ALJ determined Plaintiff had "marked limitations" in this domain. (T. 29.) The ALJ relied on the medical opinion of Dr. Randall and testimony that Plaintiff requires monitoring for her conditions. (*Id.*) As previously stated, the ALJ properly relied on the medical opinion of Dr. Randall; therefore, the conclusion Plaintiff suffered "marked limitations" in this domain was supported by substantial evidence.

### 5. Whether the ALJ Failed to Find "Marked Limitations" in the Moving and Manipulating Domain

Plaintiff argues the ALJ erred in failing to find Plaintiff had a "marked limitation" in the moving and manipulating objects domain. (Dkt. No. 11, 21 [Pl.'s Mem. of Law.]) To have a marked limitation, Plaintiff must show that her condition "interferes seriously with [her] ability to independently initiate, sustain, or complete activities," such that she has the functioning one would expect with standardized test scores that are at least two, but less than three, standard deviations below the mean. 20 C.F.R. § 416.926a(e)(2).

The ALJ determined Plaintiff had "less than marked limitation" in moving and manipulating objects. (T. 27.) The ALJ relied on the medical opinion of Dr. Randall and

evidence in the record; specifically, testimony that Plaintiff was on track with milestones, Plaintiff fed herself, used a cup, could stand, and could walk. (*Id.*)

Plaintiff argues she suffers from "bowed legs." (Dkt. No. 11 at 21 [Pl.'s Mem. of Law].) There is no evidence in the record Plaintiff suffered from "bowed legs" or had any other impairment that may cause limitations in moving and manipulating objects. As previously outline, the record shows Plaintiff performed age appropriate motor tasks (T. 283, 286, 292, 293, 300.) Further, the ALJ properly relied on opinion evidence from Dr. Randall; therefore, her conclusion Plaintiff had "less than marked limitations" in this domain was supported by substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 25, 2015
Syracuse, NY

Glenn T. Suddaby
U.S. District Judge